# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
                                        )
GREGORY L. TURNER,                      )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )        Civil Action No. 12-0638 (ABJ)
                                        )
UNITED STATES CAPITOL                   )
POLICE, et al.,                         )
                                        )
                    Defendants.         )
                                        )
```

## MEMORANDUM OPINION

Plaintiff Gregory L. Turner has brought this action against the United States Capitol Police ("USCP" or "the Agency"), the United States Capitol Police Board ("CPB"), and the Honorable Philip D. Morse in his official capacity as the Chief of the United States Capitol Police.[1] Plaintiff is a former lieutenant with the Capitol Police who was terminated from that position in May 2011. He alleges that in terminating his employment, defendants unlawfully discriminated against him on the basis of his age and race, and also violated his rights under the First and Fifth Amendments of the United States Constitution. Defendants have moved to dismiss all five counts of the complaint, or in the alternative for summary judgment on those counts. They have also moved to dismiss two defendants, the CPB and Chief Morse, on the

---

1 Chief Morse is now retired from the USCP. *See* Defs.' Statement of Undisputed Facts ¶ 3 n.2 [Dkt. # 27-1].

grounds that they were improperly joined, that sovereign immunity bars the claims against them, and that plaintiff failed to exhaust his remedies as to them.[2]

Defendants have attached numerous exhibits to the memorandum in support of their motion, and those documents include matters outside of the pleadings. Since the Court relied on some of this material in connection with its consideration of the motion to dismiss Counts One, Two, Three, and Five – the age and race discrimination claims, the Fifth Amendment due process claim, and the First Amendment freedom of association claim – it will treat defendant's motion as a motion for summary judgment on those counts. Plaintiff has failed to come forward with evidence that would establish the existence of a genuine dispute of material fact as to Count One, age discrimination, and Count Five, First Amendment freedom of association, and so defendants' motion will be granted on those claims. But since there are still genuine factual issues to be explored in connection with plaintiff's claims of race discrimination and denial of procedural due process, the Court will deny defendants' motion for judgment on Counts Two and Three without prejudice.

In addition, some matters can be determined on the face of the pleadings. The Court finds that plaintiff has failed to state a claim in Count Four for violation of his First Amendment right to free speech because he does not allege that he engaged in any speech at all, protected or otherwise. The Court also finds that it lacks subject matter jurisdiction over Chief Morse and the CPB because plaintiff has failed to exhaust his administrative remedies as to those defendants.

---

2    Defendants do not dispute that plaintiff exhausted his administrative remedies as to defendant USCP.

# BACKGROUND

## I.    Factual Background

The following facts are not in dispute except where noted.  Plaintiff joined the United States Capitol Police as a law enforcement officer in 1995, was promoted to sergeant in 1998, and to lieutenant in 2008.  Compl. ¶ 10 [Dkt. # 1]; Pl.'s Resps. to Defs.' Statement of Material Facts as to Which There is No Genuine Dispute ¶ 1 [Dkt. # 37] ("Pl.'s Resp.").  In 1998, plaintiff joined the Tribes Motorcycle Club ("TMC"), a "social riding club" for motorcycle enthusiasts. Compl. ¶¶ 11–12.  Although it is undisputed that TMC is not an "outlaw" motorcycle club, plaintiff's conduct in connection with his TMC membership has been the subject of multiple investigations by the USCP and the FBI.  Pl.'s Resp. ¶¶ 3–4, 19.

In 2003, the USCP Internal Affairs Division conducted an investigation of plaintiff and his TMC activities that did not result in any discipline.  Ex. A to Pl.'s Statement of Issues Presenting Matters for Disc. & Trial at 1 [Dkt. # 38-1].  In 2007, plaintiff learned that he and two other Capitol Police employees who were TMC members were all subjects of a criminal investigation by the FBI.  Pl.'s Resp. ¶ 3.  The FBI's investigation did not result in criminal charges, but in 2009, the USCP's Office of Inspector General ("OIG") launched its own investigation into the three employees' activities.  Id. ¶ 4.

On January 19, 2009, the day before President Barack Obama's first inauguration ceremony, plaintiff was placed on administrative leave pending the outcome of the OIG investigation.  Id.; Compl. ¶ 18; Defs.' Mem. of P. & A. in Supp. of Mot. to Dismiss or, in the Alternative, for Summ. J. at 36 [Dkt. # 27-1] ("Defs.' Mem.").  According to plaintiff, who is white, the Black Capitol Police Association ("BCPA") pressured the USCP to place him on leave, and it released a publication, *Racism Unchecked*, that attributed "white supremacist

views" to TMC. Compl. ¶ 18; *see* Ex. A to Pl.'s Proposed Disc. Plan at 13–14 [Dkt. # 39-1] (excerpts from *Racism Unchecked*).

The OIG eventually produced a report finding that plaintiff had associated with members of "outlaw" motorcycle clubs, with a white supremacist, and with convicted felons, and that he was serving as the president of TMC without prior authorization by the Capitol Police. Pl.'s Resp. ¶ 5. Based on the OIG's findings, in May 2010, the USCP charged plaintiff with violating rules prohibiting "Conduct Unbecoming," "Improper Associations," and "Outside Employment for Compensation or Voluntary Service," and recommended a penalty of termination of employment. Pl.'s Resp. ¶¶ 6–8; Ex. A. to Pl.'s Resp. at 1–2 [Dkt. # 37-1]. The USCP provided plaintiff with a redacted copy of the OIG report. Compl. ¶ 22; Defs.' Reply in Supp. of Mot. to Dismiss, or in the Alternative, for Summ. J. at 8 [Dkt. # 34] ("Defs.' Reply").

Plaintiff's disciplinary proceedings followed the three-step process for the termination of a USCP employee: first, he had an administrative hearing before a Disciplinary Review Board ("DRB"), which issued its findings and recommendation to Chief Morse; second, Chief Morse issued his own recommendation to the Capitol Police Board, or CPB; and third, the CPB voted to approve Chief Morse's recommendation. *See* Ex. E to Defs.' Mem. [Dkt. # 27-5] ("USCP Gen. Order No. 2222"); 2 U.S.C. § 1907(e)(1)(B) (2014) (providing that the Chief must give notice of a proposed termination to the CPB and that the termination only becomes final after the Board approves it or takes no action for thirty days). Pursuant to USCP General Order No. 2222, a DRB is made up of a five-member panel of USCP law enforcement personnel, including a Presiding Officer. USCP Gen. Order No. 2222 at 1–2. Plaintiff was represented by counsel throughout the termination process, including at the DRB hearing itself. Pl.'s Resp. ¶ 11.

Before the DRB hearing, plaintiff lodged multiple objections to the composition of the board through counsel. First, plaintiff objected to the selection of the Presiding Officer on the grounds that plaintiff believed him to be "associated with the BCPA" and therefore not impartial. Compl. ¶¶ 24–25; Defs.' Mem. at 18. The Agency acceded to plaintiff's request and appointed a new Presiding Officer.[3] Compl. ¶ 25; Defs.' Mem at 18. Plaintiff states that he also requested that all BCPA members be disqualified from the DRB selection process because "their organization's publication, *Racism Unchecked*, demonstrated a predetermined conclusion as to [his] alleged misconduct and an inability to decide the case impartially." Compl. ¶ 27. The Presiding Officer denied this request, and denied plaintiff's request for reconsideration of that ruling. *Id.* Finally, plaintiff states that he objected to the allegedly unexplained removal of a DRB member who was a former "probationary member" of TMC, and who plaintiff believed might be sympathetic to his case. *Id.* ¶ 28–32.

The DRB hearing took place over the course of two days. Pl.'s Resp. ¶ 9. Plaintiff had the opportunity to cross-examine some of the witness against him and to introduce multiple witnesses in his defense, although he alleges that he was not permitted to call "at least one" witness of his choice. *See, e.g.*, Ex. D1A to Defs.' Mem. at 85–90 [Dkt. # 28-2] (transcript of DRB hearing); *see also* Pl.'s Statement of Material Facts ¶ 10 [Dkt. # 32] ("Pl.'s Statement"). Plaintiff also complains that he was not given a copy of key witness statements before the

---

3     Plaintiff claims now that this Presiding Officer, too, had a "potential conflict of interest" because plaintiff had testified against his brother in a criminal matter. Compl. ¶ 25. But plaintiff does not state that he challenged the appointment of the second Presiding Officer on that basis at the time.

hearing. Compl. ¶ 67. Plaintiff acknowledges, however, that he received the statements during the course of the proceedings.[4] *Id.* ¶¶ 36–37.

The DRB found plaintiff "guilty" of just one of the three charges, "Conduct Unbecoming," and it recommended a penalty of a 14-day suspension without pay. Pl.'s Resp. ¶¶ 12–13. Plaintiff was informed that he had the right to appeal this decision, but he declined to do so. *Id.* ¶¶ 14–15. Plaintiff was found "not guilty" of the other two charges, "Improper Associations" and "Outside Employment for Compensation or Voluntary Service." *Id.* ¶ 12.

Pursuant to General Order No. 2222, the DRB submitted its findings and recommendation to Chief Morse. Compl. ¶ 38; USCP Gen. Order No. 2222 at 7–8. Instead of adopting the DRB's recommendation, though, Chief Morse recommended to the CPB that plaintiff's employment be terminated. Pl.'s Resp. ¶ 16. In a memorandum explaining his decision, Chief Morse stated that he had "reviewed the Report of Investigation and exhibits, the Disciplinary Review Officer recommendation and supporting documents, and the Disciplinary Review Board hearing testimony and recommendation, as well as other Department documents." Ex. B to Defs.' Mem. at 1 [Dkt. # 27-3] ("Morse Mem."). He stated that he based his recommendation of dismissal not only the DRB finding of "conduct unbecoming," but on the "totality of the circumstances."[5] *Id.* at 1, 6; Pl.'s Resp. ¶ 17. Chief Morse then laid out the grounds for his recommendation, including plaintiff's encounter with a founding member of the Hell's Angels, plaintiff's visit to the clubhouse of a Hell's Angels chapter, plaintiff's presence

---

4      Plaintiff also claims that one of the witnesses against him "was in violation of [his] procedural and substantive rights to due process and compromised the proceeding." Pl.'s Statement ¶ 10. This allegation appears to be another reference to the timing of the delivery of the witness statements. *See id.*, citing Compl. ¶¶ 35, 37.

5      Defendants have attached a copy of Chief Morse's memorandum to their motion. *See* Ex. B to Defs.' Mem. at 1. Plaintiff does not dispute the authenticity of this document.

and alleged interactions with members of outlaw motorcycle clubs at certain events, photographs of plaintiff at outlaw motorcycle club clubhouses and with convicted felons, and plaintiff's alleged association with at least one white supremacist. Morse Mem. at 4–5. It is plaintiff's position that some of these alleged incidents were mischaracterized and that others never occurred at all, and he points out that the 2003 investigation yielded no disciplinary action, and that the DRB had rejected the charge of "improper associations." Compl. ¶¶ 14, 43; Pl.'s Resp. ¶¶ 20–22. Plaintiff further alleges that Chief Morse was truly motivated by discriminatory and improper considerations. Pl.'s Statement ¶¶ 17–19.

Prior to the CPB's final termination decision, plaintiff submitted a letter through counsel to the CPB Chairman, Terrance W. Gainer, arguing that Chief Morse had "commit[ted] no fewer than 12 misrepresentations of the evidentiary record" and requesting that Chairman Gainer affirm the DRB's recommendation of a 14-day suspension. Ex. G to Defs.' Mem. at 1, 4 [Dkt. # 27-7] ("Pl.'s Letter to Gainer").[6] Despite plaintiff's objections, the CPB approved Chief Morse's termination recommendation by a two-to-one vote. Ex. H to Defs.' Mem. [Dkt. # 27-8]. After his dismissal, plaintiff initiated a counseling and mediation process against the USCP, but not against the other defendants. Pl.'s Resp. ¶ 28. This process terminated unsuccessfully on January 16, 2012. Id.

## II. Procedural Background

Plaintiff filed suit in this Court on April 20, 2012, alleging five causes of action against seven defendants. Compl. at 1–2. In Count One, plaintiff claims that defendants discriminated against him based on his age in violation of the Age Discrimination in Employment Act

---

6     Plaintiff denies that "he was provided a meaningful opportunity to respond to Chief Morse's findings and/or recommendation," Pl.'s Statement ¶ 26, but he does not dispute the authenticity of the letter from his attorney to Chairman Gainer.

("ADEA"), 29 U.S.C. § 621 *et seq.*, as applied to the USCP through the Congressional Accountability Act ("CAA"), 2 U.S.C. § 1302(a)(4) (2012). Compl. ¶¶ 50–57. Count Two asserts that defendants also discriminated against plaintiff on the basis of his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, as applied to the USCP through the CAA, 2 U.S.C. § 1302(a)(2). Compl. ¶¶ 58–62. In Count Three, plaintiff asserts that defendants violated his Fifth Amendment right to due process. *Id.* ¶¶ 63–69. Counts Four and Five allege violations of plaintiff's First Amendment rights to freedom of speech and association, respectively. Compl. ¶¶ 70–76. Plaintiff seeks reinstatement to his former position, back pay and other monetary relief, declaratory relief, damages, and costs and attorney fees. *Id.* at 19.

Plaintiff voluntarily dismissed four of the original defendants on June 13, 2013, [Dkt. # 4]. On March 28, 2013, the remaining defendants filed the motion to dismiss or, in the alternative, for summary judgment that is now before the Court, [Dkt. # 27]. They sought to dismiss all five counts of the complaint either under Rule 12(b)(6) for failure to state a claim or under Rule 56 at summary judgment, and to dismiss the two individual defendants, Chief Morse and the CPB, under Rule 12(b)(1) for lack of subject-matter jurisdiction. Defs.' Mem. at 2–3. Plaintiff opposed the motion for summary judgment, and he complained generally that he had not yet had the opportunity to undertake discovery. Pl.'s Opp. to Defs.' Mot. to Dismiss or, in the Alternative, for Summ. J. at 3–4, 6–8, 10–12, 15, 18, 20–22 [Dkt. # 32] ("Pl's Opp."); *see also* Ex. A to Pl.'s Opp. at 2–6 (affidavit of Peter H. Noone, plaintiff's counsel, repeating requests for discovery and citing Federal Rule of Civil Procedure 56(f)) [Dkt. # 32-1] ("Noone Aff."). On December 30, 2013, the Court ordered plaintiff to file a response to defendants' statement of undisputed facts that comported with Local Civil Rule 7(h)(1), and to provide the

Court with a proposed discovery plan that would clarify his contention that discovery was vital

to his case, [Dkt. # 35].  Plaintiff filed his responses to that Order on February 14, 2014, [Dkt.

# 37, 38, 39].

## STANDARD OF REVIEW

### I.    Motion to Dismiss

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court reiterated the two principles

underlying its decision in *Twombly*:  "First, the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions."  556 U.S. at 678.  And

"[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."

*Id*. at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully."  *Id*.  A pleading must offer more than

"labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*.,

quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."  *Id*.

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed

liberally in plaintiff's favor, and the Court should grant plaintiff "the benefit of all inferences that

can be derived from the facts alleged."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276

(D.C. Cir. 1994).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).

## II.   Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).  The existence of a factual dispute is insufficient to preclude summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550

U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

A motion to dismiss must be treated as a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d); *see also Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003) (holding that district court's consideration of matters outside the pleadings converted the defendant's Rule 12 motion into one for summary judgment). Because defendants have submitted matters outside of the pleadings, and the Court will consider some of them in the resolution of some issues presented by this motion, the Court will treat it as one for summary judgment.

## ANALYSIS

As a preliminary matter, the Court notes that defendants have moved for summary judgment before any discovery has been conducted in this case. *See Hamilton v. Geithner*, 743 F. Supp. 2d 1, 8 (D.D.C. 2010), *aff'd*, 666 F.3d 1344 (D.C. Cir. 2012). But that is not necessarily fatal to the motion; the party opposing summary judgment "ha[s] the burden to state with 'sufficient particularity . . . why discovery [is] necessary.'" *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008), quoting *Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989). If the opposing party "adequately explains why, at [this] timepoint, it cannot present by affidavit facts needed to defeat the motion," then "a court *may* deny a motion for summary judgment" and permit discovery. *Strang*, 864 F.2d at 861. But even at this early stage, a district court may deny a request for discovery and grant a motion for summary judgment when the non-moving party "offer[s] no reasonable basis to suggest that discovery" will bear out its claims. *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 174 F.3d 231, 237–38 (D.C. Cir. 1999). With these principles in mind, the Court turns to defendants' motion.

**I.   Defendants did not violate the ADEA (Count One), but questions of material fact remain as to plaintiff's Title VII claim (Count Two).**

The ADEA and Title VII prohibit adverse employment actions on the basis of age and race, respectively.  *See* 29 U.S.C. § 623(a)(1) (ADEA); 42 U.S.C. § 200e-2(a)(1) (Title VII). When a plaintiff produces no direct evidence of age or race discrimination, the Court will analyze his claims under the framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1155 (D.C. Cir. 2004).  First, the plaintiff must establish a prima facie case of discrimination; second, the defendant must "articulate some legitimate, non-discriminatory reason" for the employment decision; and third, the plaintiff must prove by a preponderance of the evidence that the employer's proffered reason is pretext for discrimination.  *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006), citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (internal citations omitted).  To establish a prima facie case, a plaintiff must show that:  (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) "the unfavorable action gives rise to an inference of discrimination."  *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005), quoting *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002) (internal quotation marks omitted).

At the summary judgment stage, however, if the employer produces a legitimate nondiscriminatory reason for its actions, "'the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas.*'"  *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009), quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).  The question becomes whether the plaintiff produced evidence sufficient for a reasonable jury to find that the employer's stated reason for the adverse action was not the actual reason, and that the employer discriminated against the plaintiff.  *Brady*, 520

F.3d at 495. In assessing this question, the court considers "all the evidence, which includes not only the prima facie case but also the evidence the plaintiff offers to attack the employer's proffered explanation for its action and other evidence." *Jones,* 557 F.3d at 677 (internal citations and quotation marks omitted). "If the employer's stated belief about the underlying facts is reasonable in light of the evidence, however, there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Brady*, 520 F.3d at 495.

Here, defendants assert legitimate nondiscriminatory reasons for terminating plaintiff: the DRB finding of "conduct unbecoming" and the "totality of the circumstances" presented by the administrative record. Defs.' Mem. at 41. Specifically, defendants state that plaintiff was terminated because of his repeated contacts with outlaw motorcycle clubs and club members and his "involvement with an individual with white supremacist ties." *Id.* at 42. For Count One, the Court finds that plaintiff has failed to demonstrate that defendants' "stated belief about the underlying facts" was in reality pretext for age discrimination, and has also failed "to indicate what facts [he] intend[s] to discover that would create a triable issue" on this claim. *Brady*, 520 F.3d at 495; *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 174 F.3d 231, 237 (D.C. Cir. 1999). Therefore, the Court will grant summary judgment to defendants on Count One. But as to Count Two, race discrimination, the Court finds that plaintiff has pointed to genuine issues of material fact that are appropriate for discovery, and the Count will survive defendants' motion.

### A. Plaintiff's age discrimination claim fails (Count One).

Plaintiff's ADEA claim rests entirely upon two arguments: (1) that Chief Morse's explanation for his rejection of the DRB's recommended sanction was pretextual; and (2) that the USCP treated younger employees more favorably than plaintiff. But plaintiff alleges no facts that would link defendants' decision to his age. Rather, he simply asserts that he has

"sufficiently alleged pretext on the part of Chief Morse and USCP in terminating his employment." Pl.'s Opp. at 7. This conclusory statement is insufficient to create a triable issue of fact. *See Carpenter*, 174 F.3d at 401 ("'It is well settled that [c]onclusory allegations unsupported by factual data will not create a triable issue of fact.'"), quoting *Exxon Corp. v. FTC*, 663 F.2d 120, 126–27 (D.C. Cir. 1980).

In addition, plaintiff has failed to demonstrate that he is so similar to the younger employees he mentions that a reasonable trier of fact could infer discrimination. To create an inference of discrimination through comparisons, a plaintiff must demonstrate that "all of the relevant aspects of his employment situation were nearly identical to those of" the comparator employees. *Mungin v. Katten Munchin & Zavis*, 116 F.3d 1549, 1554 (D.C. Cir. 1997) (citation and internal quotation marks omitted) (holding plaintiff, a laterally-hired law firm associate, had failed to create an inference of discrimination when he compared himself to "homegrown associates" because they were too dissimilar). Turner compares himself to: (1) a "younger Dignitary Protection Officer" who was allegedly suspended (but not terminated) after he left his service weapon unsecured in a hotel room, returned to find the room occupied by an African-American family, seized the gun and aimed it at them while spouting racial slurs; (2) an officer who was merely suspended after both breaking into a home while intoxicated and accidentally shooting a taxi driver; and (3) a Capitol Police mechanic who was also a TMC member and "participated in most or all of the alleged misconduct for which the Agency terminated plaintiff." Compl. ¶¶ 55–57.

Even drawing all inferences in favor of plaintiff, none of these comparators is "nearly identical" to him. First, unlike plaintiff, a former Lieutenant, none of the three employees was a supervisor. Moreover, plaintiff's alleged misconduct differed significantly from that of the first

two individuals. And even if the third employee did participate in "most or all" of the conduct that led to plaintiff's termination, that employee was a mechanic, not a sworn law enforcement officer. *See* Compl. ¶ 51. As these supposed comparators form the only other basis for plaintiff's age discrimination claim, plaintiff has failed to demonstrate that defendants' proffered legitimate nondiscriminatory reasons for terminating him are in reality a pretext for age discrimination. Thus, plaintiff has not, as he is required to do in response to a motion for summary judgment, come forward with the facts from which a reasonable juror could conclude that defendants discriminated against him based on his age.

Plaintiff has also failed to meet his "burden to state with 'sufficient particularity . . . why discovery [is] necessary.'" *Ikossi*, 516 F.3d at 1045, quoting *Strang*, 864 F.2d at 861. In his submissions in opposition to defendants' motion, plaintiff broadly asserts that discovery is necessary so that he may determine: "whether Defendants treated similarly situated individuals outside Plaintiff's protected age . . . categor[y] more favorably;" whether "Chief Morse made a proper consideration of the evidence and mitigating circumstances;" and whether "Chief Morse and [the] USCP were motivated by discriminatory animus." Noone Aff. ¶¶ 12–13, 17; *see also* Pl.'s Opp. at 7 ("[D]iscovery is vital . . . so as to allow Plaintiff to test the legitimacy and adequacy of the reasoning proffered by the Defendants"). In an abundance of caution, the Court gave plaintiff a second opportunity to specify the discovery he would undertake if the Court deferred or denied defendants' motion. *See* Order dated December 30, 2013 [Dkt. # 35]. But plaintiff's proposed discovery plan makes little mention of age discrimination at all, except to state repeatedly that he wishes to discover "[a]ny and all information surrounding the discipline administered to similarly situated employees over the past ten years," including their age. Pl.'s Proposed Disc. Plan at 5, 6, 10, 11, 12, 17, 18, 19 [Dkt. # 39] ("Pl.'s Disc. Plan"). Plaintiff has

therefore alleged "no reasonable basis to suggest that discovery" would uncover such comparators or bear out his suspicions. *See Carpenter*, 174 F.3d 231, 237 (D.C. Cir. 1999) (affirming grant of pre-discovery summary judgment where plaintiff relied on "plainly conclusory assertion[s] without supporting facts").

Rule 56(d) does not require a court to deny a motion for summary judgment in order to permit a plaintiff to embark on discovery in the vague hope that he will uncover something to substantiate speculative allegations. *See Reshard v. Peters*, 579 F. Supp. 2d 57, 71 (D.D.C. 2008), *aff'd sub nom. Reshard v. LaHood*, 358 F. App'x 196 (D.C. Cir. 2009) ("Further speculation by the plaintiff as to why the defendant acted as she did is insufficient to create a triable issue of fact."); *Bastin v. Fed. Nat'l Mortg. Ass'n*, 104 F.3d 1392, 1396 (D.C. Cir. 1997) ("The district court does not abuse its discretion when it denies a discovery request that would amount to nothing more than a fishing expedition."); *see also Raymond v. U.S. Capitol Police Bd.*, 157 F. Supp. 2d 50, 59 n.6 (D.D.C. 2001) ("While the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true, the court is not required to accept mere unsupported allegations offered in opposition to the motion for summary judgment."). So the Court will grant defendant's motion for summary judgment on Count One and deny plaintiff's request for discovery on the age discrimination issue.

**B. Questions of material fact preclude summary judgment on plaintiff's race discrimination claim (Count Two).**

Plaintiff's "reverse" race discrimination claim arises out of the role allegedly played by the Black Capitol Police Association ("BCPA") in his disciplinary hearing and termination. He claims: (1) that "the Agency originally assigned a BCPA member to serve as the Presiding Officer of Plaintiff's DRB and then refused to disqualify BCPA members from serving on the

DRB, while eliminating . . . a duly-selected white DRB member, for unstated reasons"; (2) that the Agency gave "preferential treatment to similarly-situated black employees;" (3) that the BCPA pressured the Agency into suspending plaintiff just before the inauguration in 2009; and (4) that the BCPA filed "class action lawsuits against the Agency alleging that the Agency gave preferential treatment to white employees," giving the Agency an incentive to harshly discipline plaintiff. Compl. ¶¶ 61–62. Plaintiff also argues that Chief Morse's reliance on unnamed "other department documents" in his termination decision suggests that the Chief's motivations may have been discriminatory. Pl.'s Resp. ¶ 18; Pl's Statement of Issues Presenting Matters for Disc. & Trial at ¶¶ 13, 22 [Dkt. # 38] ("Pl.'s Disc. Issues"). Some of these claims do not bear close scrutiny, but there is enough there that the Count will not be dismissed at this juncture.

Plaintiff's complaints about the role of the BCPA in the DRB can be dismissed out of hand. First, plaintiff was in fact successful in dislodging the BCPA member from his position as the DRB Presiding Officer, and second, as plaintiff admits, he knew he had the option to appeal the DRB's decision, but he declined to do so on these or any other grounds. Pl.'s Resp. ¶¶ 14–15. So plaintiff has waived any objection to the composition of the DRB. Moreover, plaintiff's core argument in this case is that Chief Morse should have *adopted* the findings and recommendations of the DRB, not that they were unfounded or defective. *See, e.g.*, Pl.'s Disc. Issues ¶ 31 (suggesting that Chief Morse's "rejection of the results from . . . the DRB evidence[s] pretext for unlawful animus and discrimination based on age or race."). Therefore, plaintiff's complaints about the DRB do not advance his discrimination claim.

Second, as with his age discrimination claim, plaintiff has failed to offer comparator employees who are similar enough to him to support an inference of racial discrimination. *See Mungin*, 116 F.3d at 1554 (holding that "all of the relevant aspects of [a plaintiff's] employment

situation [must be] nearly identical to those of" the comparator employees).  Plaintiff attempts to compare himself to African-American employees who allegedly were not terminated after they: (1) committed two offenses of looking at pornography while on duty; (2) were "caught during duty hours in the company of a transvestite prostitute, who managed to relieve [the officer] of his Agency-issued firearm;" (3) caused traffic accidents and drove with suspended licenses; and (4) had "approximately six AWOL charges."  Compl. ¶ 62.  None of this alleged misconduct even resembles the misconduct for which plaintiff was terminated, and only one of the alleged comparators was a supervisor.[7]  Plaintiff has failed to demonstrate that "all the relevant aspects" of his "employment situation" were "nearly identical" to those of these employees, and so his comparator evidence fails to undermine the legitimacy of defendants' asserted nondiscriminatory reasons for terminating him.  *See Mungin*, 116 F.3d at 1554.

But the Court is troubled by Chief Morse's statement that he relied on unspecified "other department documents" and the "totality of the circumstances" when he recommended plaintiff's termination.  *See* Morse Mem. at 1, 6.  And although plaintiff's claims about the influence of the BCPA appear to be somewhat speculative, these allegations, if substantiated, may constitute the kind of "background circumstances" that would support a reverse-discrimination claim under the law of this Circuit.  *See Mastro*, 447 F.3d at 851 (stating that a reverse-discrimination claimant "must show additional background circumstances that support the suspicion that the defendant is that unusual employer who discriminates against the majority," such as "political pressure . . . to promote minorities" or "evidence that there is something 'fishy' about the facts of the case") (citations and internal quotation marks omitted).

_____

7       The one supervisor was a Captain who was allegedly caught twice looking at pornography while on duty, and who plaintiff claims was demoted in rank, but not in pay, as a result.  Compl. ¶ 62.

Thus, while the Court expresses no view as to whether this claim will ultimately survive a dispositive motion, it finds that plaintiff has raised a genuine issue of material fact as to the nature of the background circumstances here, including what "other department documents" and "circumstances" Chief Morse considered, and what those facts reveal about the motivation behind the termination. For that reason, the Court will deny defendants' motion for summary judgment on plaintiff's race discrimination claim without prejudice to a future motion based upon a full factual record.

**II.    Questions of material fact preclude summary judgment on plaintiff's due process claim (Count Three).**

The Fifth Amendment of the United States Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. To demonstrate a procedural due process violation, a plaintiff must show both that the government has deprived it of a protected interest and that the government did not afford it constitutionally sufficient procedure. *See Amer. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 59 (1999). A public employee with a protected interest in his position "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" either "in person or in writing." *Cleveland Bd. of Educ. v.*

*Loudermill*, 470 U.S. 532, 546 (1985).  The Court finds that questions of material fact preclude summary judgment on plaintiff's due process claim at this time.[8]

**A. Questions of material fact exist as to the protected status of plaintiff's employment.**

In their motion for summary judgment, defendants contend that plaintiff has not carried his burden to establish that he had a protected interest in his supervisory position in a federal law enforcement agency.  Defs.' Mem. at 16–17.  A protected "property interest in employment is created not by the Constitution but 'by existing rules or understandings that stem from an independent source such as state law.'"  *Hall v. Ford*, 856 F.2d 255, 266 (D.C. Cir. 1988), quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  Furthermore, "[f]or [an] employee to have a constitutionally protected property interest in his job, the [independent source of law] must provide the employee with an objectively reasonable expectation that he is entitled to retain it."  *Id.*

In his opposition to defendants' motion, plaintiff offers no arguments to support his claim that he had a protected property interest in his employment as a U.S. Capitol Police lieutenant. Defendants argue that he has, therefore, conceded Count Three, and they offer no other

---

8        Although Count Three alleges solely a procedural due process claim, in his subsequent filings, plaintiff alludes to a violation of his substantive due process rights, as well.  *Compare* Compl. ¶ 64 ("Defendants deprived Plaintiff of a protected property interest in his continued federal employment without due process of law, contrary to the Fifth Amendment of the United States Constitution."), *with* Pl.'s Opp. at 12 ("Plaintiff specifically denies . . . that he received meaningful procedural and substantive due process . . . ."), *id.* at 14 (same), Pl.'s Statement at ¶¶ 8, 10 (same), *and* Pl.'s Disc. Issues ¶ 24 (alleging a violation of plaintiff's procedural and substantive due process rights).  "To constitute a substantive due process violation, the defendant official's behavior must be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  *Estate of Phillips v. District of Columbia*, 455 F.3d 397, 493 (D.C. Cir. 2006), quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).  Defendants' alleged conduct does not come close to meeting this standard.  Thus, to the extent that plaintiff intended to assert a violation of his right to substantive due process, the Court finds that he has failed to state a claim.

arguments on that point. Defs.' Reply at 7–8. But in the complaint, plaintiff plainly asserts that he possessed a protected property interest in his employment. Compl. ¶ 64. Moreover, defendants themselves have pointed the Court to two independent sources of law or rules that suggest that plaintiff may have had the requisite protected interest: 2 U.S.C. § 1907, which provides for CPB approval of USCP employee terminations; and USCP General Order No. 2222, which outlines the DRB hearing process. *See* Defs.' Mem. at 7; USCP Gen. Order No. 2222 at 1–10.

In 2 U.S.C. § 1907, Congress has provided that the Chief of the Capitol Police may only terminate "an officer, member or employee" of the USCP after giving notice of the termination to the Capitol Police Board, and either receiving CPB approval or waiting for a thirty-day period to expire. 2 U.S.C. § 1907(e)(1)(B). This requirement strongly suggests that employees covered by the statute have "an objectively reasonable expectation" that they are otherwise "entitled to retain" their jobs. *See Hall*, 856 F.2d at 266.

Likewise, the "elaborate disciplinary procedure" set forth in General Order No. 2222 also suggests that plaintiff had reason to believe he was entitled to his position.[9] *See Vanover v. Hantman*, 77 F. Supp. 2d 91, 102 (D.D.C. 1999), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002) (holding that a custodial cleaner in the United States Senate Restaurants had a protected property interest in his employment based, in part, on the "elaborate disciplinary procedure" outlined in the applicable personnel manual). The General Order's requirement that a DRB guilty verdict must be based on "'substantial evidence' or a 'preponderance of the evidence'" strongly indicates that

---

9    The Court notes that General Order No. 2222 concludes with the statement, "Nothing in this Order is intended or should be construed as creating a contract, right, or interest, express or implied, not otherwise created by law." USCP Gen. Order No. 2222 at 10.

plaintiff could only be terminated for cause, and thus enjoyed a property interest in his position. *See id.* at 102–03; *see also* USCP Gen. Order No. 2222 at 3.

Despite the ready availability of this evidence, neither party has fully addressed the question of the protected status of plaintiff's employment. Therefore, at this time, the Court cannot conclude as a matter of law that plaintiff did not enjoy a property interest in his position with the USCP, and it will not dismiss Count Three.

### B. Questions of material fact exist as to whether plaintiff received notice and an opportunity to be heard.

It is undisputed that plaintiff was aware of the OIG investigation into his activities, that he received a "Request for Disciplinary Action" stating the charges against him, and that he knew the proposed penalty was the termination of his employment. Compl. ¶¶ 20–21. Plaintiff insists that this notice was insufficient, however, because the names of "relied-upon witnesses" were redacted from the OIG report; he did not receive "copies of relied-upon witness statements" before the hearing; and Chief Morse allegedly recommended his termination on the basis of allegations that were not addressed in the OIG report or at the DRB hearing. *Id.* ¶ 67. He further alleges that he was denied an opportunity to be heard because: he was not allowed to call "his chief accuser" as a witness at the DRB hearing; the Agency disqualified a former "probationary member" of TMC from serving on the DRB "without good cause shown;" he was not provided with "an opportunity to respond directly to the ultimate decision-makers, Chief Morse and the [CPB];" and defendants "did not honor [their] obligation to refrain from discipline on the basis of charges unsupported by substantial evidence." Compl. ¶¶ 68–69. Here again, while some of plaintiff's allegations would not support a due process claim, there are others that make the entry of judgment premature at this time.

Plaintiff's failure to appeal the DRB determination undermines his due process claim to the extent that it is based on alleged infirmities in that part of the process. Moreover, while the Due Process Clause required defendants to provide plaintiff with notice of the charges against him, there was no constitutional entitlement to the names of all "relied-upon witnesses." Indeed, a termination may be proper even when an entire report is withheld from an employee. *See Solomon v. Office of Architect of Capitol*, 539 F. Supp. 2d 347, 351 (D.D.C. 2008) ("[D]ue process does not require that a hearing officer's report be made available to an employee."), *aff'd* No. 08-5152, 2008 U.S. App. LEXIS 26313, at *2 (D.C. Cir. December 12, 2008). For the same reasons, the withholding of certain witness statements until the DRB hearing was underway does not constitute an unconstitutional deprivation of notice, especially given that plaintiff was able to respond to those statements during the proceedings.[10] *See* Compl. ¶¶ 36–37.

Moreover, once an employee receives adequate notice, all the Fifth Amendment requires is "some form of hearing." *Vanover*, 77 F. Supp. 2d at 103, quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982). Here, plaintiff received a comprehensive two-day administrative hearing at which he was represented by counsel, called multiple witnesses, and cross-examined the witnesses at the hearing who testified against him. There is no question that plaintiff had ample "opportunity to present his side of the story" at the DRB, *see Loudermill*, 470 U.S. at 545, and, indeed, plaintiff declined to object to the DRB's decision when he had the chance. Pl.'s Resp. ¶¶ 14–15. In addition, plaintiff submitted a detailed letter protesting Chief Morse's recommendation to the Chairman of the CPB prior to that Board's final decision. Pl.'s Letter to Gainer at 1.

---

10    Even in a criminal trial, where full due process rights attach, the Jencks Act does not require the government to produce witness statements in advance of their testimony. 18 U.S.C. § 3500(a); *see also* Fed. R. Crim. P. 26.2(a) (providing for the production of witness statements after the witness has testified).

But as with plaintiff's race discrimination claim, the Court finds Chief Morse's express reliance on specified "other department documents" and "circumstances" to be troubling. Without further facts, the Court cannot conclude that there is no genuine issue of material fact as to whether plaintiff received full "notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *See Loudermill*, 470 U.S. at 546. Therefore, plaintiff's due process claim on these grounds will survive defendants' motion, again, without prejudice to a future dispositive motion.

### III. Defendants did not violate plaintiff's First Amendment rights.

The First Amendment of the United States Constitution protects not only freedom of speech, but also the right to "associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984); U.S. Const. amend. I. In Counts Four and Five of the complaint, plaintiff alleges that defendants violated his freedoms of speech and association, respectively. Compl. ¶¶ 70–76. Plaintiff claims that defendants terminated him in retaliation for multiple activities that he describes as both "speech" and "association": (1) "attending the funeral of a young local father and donating money to his widow and orphaned children;" (2) "attending a motorcycle event hosted at a public restaurant;" and (3) "participating in charitable events including a 'Toys for Tots' fundraiser . . . and a benefit for military families." *Id.* ¶ 72; *see also id.* ¶ 76. In addition, in Count Five, plaintiff alleges that he was also terminated based on his association with TMC. *Id.* ¶ 75.

### A. Plaintiff fails to state a freedom of speech claim.

Freedom of speech under the First Amendment can encompass both the spoken word and communicative conduct. *See Texas v. Johnson*, 491 U.S. 397, 404 (1989), quoting *Spence v.*

*Washington*, 418 U.S. 405, 409 (1974) ("[C]onduct may be 'sufficiently imbued with elements of communication to fall within the scope of the First [Amendment].'").  Because plaintiff does not contend that his termination was prompted by any words that he uttered, the Court will construe Count Four to allege retaliation on the basis of protected expressive conduct.  Conduct is expressive speech when (1) the actor has "'[a]n intent to convey a particularized message,'" and (2) "'the likelihood [is] great that the message would be understood by those who viewed it.'"  *Id.*, quoting *Spence*, 418 U.S. at 410–411.

Still, plaintiff's allegations fail to establish that his activities constituted any form of protected speech, expressive conduct or otherwise.  Nowhere in the complaint, nor in any other pleading, does plaintiff suggest that he intended to convey a "concrete and particularized" message during any of the activities he describes.  Indeed, plaintiff goes to some length to characterize his conduct as "unintentional and incidental," Pl.'s Letter to Gainer at 3, emphasizing his mere attendance at "events open to the public at which a few members of outlaw motorcycle clubs were allegedly also present."  Compl. ¶ 41.  If, as he describes it, plaintiff did not intend to convey a "particularized message" by his actions, his conduct cannot rise to the level of protected expressive activity.  *See Johnson*, 491 U.S. at 404.  Therefore, plaintiff has failed to state a claim for retaliation for protected speech, and Count Four will be dismissed.

### B.  Defendants did not violate plaintiff's right of association.

Plaintiff further claims that defendants terminated him in retaliation for allegedly protected associations.  Compl. ¶¶ 75–76.  Although the government has no legitimate interest in disciplining ordinary citizens based on protected First Amendment activity, in cases involving government employees, "courts must be attentive to the 'government's interest in achieving its goals as effectively and efficiently as possible.'"  *Kinney v. Weaver*, 367 F.3d 337, 358 (5th Cir.

2004), quoting *Waters v. Churchill*, 511 U.S. 661, 675 (1994) (plurality opinion). Therefore, a court must balance the interests of the government against those of its employees. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *see also Williams v. IRS*, 919 F.2d 745, 746 (D.C. Cir. 1990) (applying *Pickering* balancing test to First Amendment association claim).[11]  In particular, a court looks to whether a plaintiff's associations affected the "effective functioning of [his] employer's enterprise," considering such factors as "'whether [the plaintiff's activities] . . . impair[ed] . . . harmony among coworkers, ha[d] a detrimental impact on close working relationships for which personal loyalty and confidence are necessary . . . or interfere[d] with the regular operation of the enterprise.'"  *Hall v. Ford*, 856 F.2d 255, 260 (D.C. Cir. 1988), quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).

In response to plaintiff's claims, defendants assert a vital interest in "having United States Capitol Police officers avoid contact with members of outlaw motorcycle clubs, who are known to engage in criminal activity, and [with] known white supremacists." Defs.' Mem. at 31. Plaintiff does not dispute that at least some of the contacts did, in fact, occur.  *See, e.g.*, Compl. ¶¶ 14, 20 (admitting an encounter with a leader of the Hell's Angels and a "brief and unplanned presence . . . outside a Hell's Angel's clubhouse," and that a former TMC member was affiliated with a white supremacist organization).  Rather, plaintiff insists that these incidents were brief and innocent, or that defendant Chief Morse cited them as a pretext for an otherwise discriminatory action.  *See, e.g.*, *id*; Pl.'s Statement ¶ 22.  Plaintiff also admits that the USCP

---

11      For First Amendment speech claims, courts apply the Connick "public concern" test before engaging in the *Pickering* balancing test. *See, e.g.*, *Hall v. Ford*, 856 F.2d 255, 258 (D.C. Cir. 1988), citing *Connick v. Myers*, 461 U.S. 138, 146 (1983).  The D.C. Circuit has not decided, however, whether the *Connick* "public concern" test also applies to First Amendment association claims. As the Court's analysis does not hinge on the application of *Connick* to plaintiff's associational rights claim, it is not necessary to decide that question here.

placed him on leave on the eve of President Obama's inauguration as the result of the investigation that ultimately led to his termination. *See* Compl. ¶ 18.

Even drawing all reasonable inferences in favor of plaintiff, as the Court must at this stage, defendants have asserted an interest in the efficient operation of law enforcement activities that outweighs plaintiff's interest in his cited activities. Plaintiff was not only a sworn law enforcement officer, but also a supervisor of other officers. His multiple encounters with outlaw organizations and individuals could reasonably be expected to reflect poorly on the Capitol Police, to "impair harmony among coworkers," and to "interfere with the regular operation of the enterprise." *See Hall*, 856 F.2d at 260, quoting *Rankin*, 483 U.S. at 388; *see also Connick*, 461 U.S. at 152 (stating that an employer need not "allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action"). Indeed, plaintiff's own allegations suggest that members of the BCPA had concerns about working with him, supporting this finding. Compl. ¶ 18. Moreover, plaintiff's suspension immediately prior to President Obama's inauguration indicates that his associations negatively affected the "functioning of [his] employer's enterprise."[12] *See Hall*, 856 F.2d at 260.

Throughout his pleadings, plaintiff has emphasized that defendants have long been on notice of his TMC affiliation, and that the previous USCP investigation of his TMC activities yielded no discipline. *See, e.g.*, Compl. ¶ 13; Pl.'s Statement ¶¶ 1–2. Plaintiff appears to

---

12    In his letter to Chairman Gainer, plaintiff suggests that because he allegedly "was not scheduled to work the inauguration" but rather was "assigned routine patrol supervisory duties outside of any secure area," his suspension could not have "impaired the Agency's operations." Pl.'s Letter to Gainer at 3. But it is reasonable to infer that regardless of plaintiff's assignment, the need for the Agency to replace a supervisory employee the day before an all-hands-on-deck event as significant as a presidential inauguration might well "interfere[] with the regular operation of the enterprise." *See Hall*, 856 F.2d at 260, quoting *Rankin*, 483 U.S. 378; *see also id.* at 261 (stating that when balancing a public employee's interests against the government's, the Court may "draw[] reasonable inferences of harm from the employee's speech").

contend that defendants have therefore waived any objection to his TMC-related activities now. But the prior investigation of plaintiff's activities should have placed *plaintiff* on notice that his TMC affiliation was a matter of concern for his employer. And given the undisputed fact that plaintiff's TMC membership led him to have at least some unsavory contacts, it is not unreasonable – and certainly not unconstitutional – that the USCP continued to have concerns about his activities. Thus, even accepting plaintiff's allegations as true, the Court finds that defendants' interests outweigh those of plaintiff.

Finally, plaintiff has "offered no reasonable basis to suggest that discovery" will substantiate his First Amendment freedom of association claim. *See Carpenter*, 174 F.3d at 237–38. In his proposed discovery plan, plaintiff seeks to discover the "background" information underlying the USCP's decision to drop charges of "Conduct Unbecoming" and "Improper Associations" in 2003, and "[a]ny and all USCP policies, procedures or regulations concerning employees' off-duty associations with civic groups, enthusiast groups, or hobby activities." Pl.'s Disc. Plan at 2, 3, 4, 9, 10, 15, 16, 20. Plaintiff appears again to try to press his theory that defendants waived any objection to his activities, which the Court rejects for the reasons stated above. Plaintiff has failed to indicate any reason why any of the information he proposes to discover would undermine defendants' vital interest in "having United States Capitol Police officers avoid contact" with criminals and white supremacists. *See* Defs.' Mem. at 31. Therefore, the Court will deny plaintiff's request for discovery on this issue and will grant summary judgment to defendants on Count Five.

### IV. Defendants Chief Morse and the CPB will be dismissed from this case.

The Congressional Accountability Act ("CAA"), 2 U.S.C. § 1301, *et seq.*, authorizes "covered employees," including employees of the Capitol Police, to allege claims under eleven

enumerated statutes against an "employing office." *See* 2 U.S.C. §§ 1301–02. One of the enumerated statutes is Title VII of the Civil Rights Act of 1964. *Id.* § 1302(a)(2). For purposes of the Capitol Police, the term "employing office" is defined as "the United States Capitol Police." *Id.* § 1301(9)(D). The CAA further requires that a claimant must exhaust his remedies through a process of counseling and mediation before he can bring an action in federal court. *Id.* §§ 1401, 1408; *see also Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 702–03 (D.C. Cir. 2009) (describing exhaustion requirements under the CAA).[13]

Defendants assert that this Court lacks subject matter jurisdiction over all of plaintiff's claims against Chief Morse and the CPB because the CAA only permits plaintiff to bring suit against his "employing office," because his claims against Chief Morse and the CPB are barred by the doctrine of sovereign immunity, and because plaintiff has failed to exhaust his administrative remedies as to these two defendants. Defs.' Mem. at 8–15. Plaintiff counters that his claims fall within the *Larson-Dugan* exception to the doctrine of sovereign immunity, Pl.'s Opp. at 12–13, 18, citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949); *Dugan v. Rank*, 372 U.S. 609, 621–22 (1963), and that his claims for monetary damages against Chief Morse and the CPB are permissible under the *Bivens* line of cases. Pl.'s Opp. at 15–16; *see also Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). But the Court need not determine whether these exceptions apply, because even if it were proper to bring suit against Chief Morse and the CPB, it is undisputed that plaintiff failed to embark upon the congressionally mandated counseling and mediation process with either of

---

13      In 2010, Congress enacted the United States Capitol Police Administrative Technical Corrections Act of 2009, which changed the CAA definition of "employing office" from "the Capitol Police Board" to "the United States Capitol Police." *See* Pub. L. No. 111-145 § 2(a)(5)(A), 124 Stat. 49, 50 (2010). Therefore, lawsuits filed prior to the enactment of this statute, such as *Blackmon-Malloy*, name the CPB as the defendant. *See* 575 F.3d at 699.

them, even though he did so with the Capitol Police. Pl.'s Resp. ¶ 28. Therefore, the Court lacks subject matter jurisdiction over plaintiff's Title VII claims against defendants Chief Morse and the CPB, and those claims will be dismissed. *See Blackmon-Malloy*, 575 F.3d at 705 (holding that completion of the CAA's counseling and mediation process is a jurisdictional requirement).

Moreover, because plaintiff's constitutional claims are based on the same facts as his employment claims, and are based solely on his termination, Compl. ¶¶ 64, 72, 75–76, they must also be dismissed as to Chief Morse and the CPB. *See Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990) ("[W]hen a constitutional claim is intertwined with a statutory one, and Congress has provided machinery for the resolution of the latter, a plaintiff must first pursue the administrative machinery."); *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1433–35 (D.C. Cir. 1996) (affirming dismissal of unexhausted constitutional claims based on adverse employment action, but reaching merits of unexhausted constitutional claim that "stands independently of" the adverse employment action).

## CONCLUSION

Accordingly, the Court will grant defendants' motion to dismiss or, in the alternative, for summary judgment, as to Counts One, Four, and Five of the complaint, and will deny it as to Counts Two and Three. In addition, defendants Chief Morse and the CPB will be dismissed. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: March 31, 2014